## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HIGH CREST FUNCTIONAL MEDICINE, LLC, IMMUNOGEN DIAGNOSTICS, LLC, MICHAEL SEGAL, M.D. and NEELENDU BOSE,<br><br>        Plaintiffs,<br><br>        v.<br><br>HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, INC. and MERCK & CO., INC.,<br><br>        Defendants,<br><br>        v.<br><br>HIGH CREST, LLC, STEPHANIE BOSE, HIGH CREST HEALTH, HIGH CREST MEDICAL, HIGH CREST INTEGRATIVE MEDICINE;<br><br>        Additional Defendants on the Counterclaim. | CIVIL ACTION NO.: 15-cv-88876 (MCA)(LDW) |

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM OF HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY

Defendant Horizon Blue Cross Blue Shield of New Jersey ("Horizon") by way of Answer to the Complaint of Plaintiffs says:

1.     It is admitted that this action seeks to recover the payment of medical benefits. The allegation that Horizon wrongfully and systematically denied medical benefits is a legal conclusion to which no response is required. To the extent a response is deemed required, the allegation is denied.

1

**PARTIES**

2.      Horizon is without sufficient knowledge to confirm or deny the allegations contained within this paragraph of the Complaint and leaves Plaintiffs to their proofs.

3.      Horizon is without sufficient knowledge to confirm or deny the allegations contained within this paragraph of the Complaint and leaves Plaintiffs to their proofs.

4.      Horizon is without sufficient knowledge to confirm or deny the allegations contained within this paragraph of the Complaint and leaves Plaintiffs to their proofs.

5.      Horizon is without sufficient knowledge to confirm or deny the allegations contained within this paragraph of the Complaint and leaves Plaintiffs to their proofs.

6.      Denied, as stated.   By way of further response, Horizon is a health service corporation that provides health care benefits to its members and insureds pursuant to a variety of health benefit plans and provides administrative services for self-funded health benefit plans.

7.      Horizon admits only that it administers Merck Sharp & Dohme Corporation's ("Merck") employee benefit plan.  The remaining allegations contained within this paragraph of the Complaint are not directed toward Horizon, accordingly, Horizon offers no answer to same.

**JURISDICTION AND VENUE**

8.      The allegations of this paragraph are legal conclusions to which no response is required.

9.      The allegations of this paragraph are legal conclusions to which no response is required.

10.      The allegations of this paragraph are legal conclusions to which no response is required.

3681310-1

**RELATED ACTION**

11.     Admitted in part; Denied, as stated, in part.  It is admitted that on July 26, 2012 an action was filed on behalf of Plaintiffs, Neelendu Bose and Dr. Michael Segal, against the same defendants named here and others and was docketed at *Bose, et al. v. Horizon, et al.*, 12-cv-04671 (hereinafter, the "2012 Action").  By way of further response, Plaintiffs herein -- High Crest Functional Medicine, LLC and Immunogen Diagnostics, LLC -- were not formally Plaintiffs to that action.  The 2012 Action, however, was brought by Mr. Bose d/b/a Immunogen Diagnostics and Dr. Michael Segal d/b/a High Crest Functional Medicine, LLC.  The balance of the allegations of this paragraph, with the sole exception of the allegation that the 2012 Action had several years of stagnation which is expressly denied, are admitted.

**FACTS COMMON TO ALL COUNTS**

**Background**

12.     Horizon is without sufficient knowledge to confirm or deny the allegations contained within this paragraph of the Complaint and leaves Plaintiffs to their proofs.

13.     Horizon is without sufficient knowledge to confirm or deny the allegations contained within this paragraph of the Complaint and leaves Plaintiffs to their proofs.  By way of further response, it is admitted that Horizon issued, insured and/or administered the employee benefit plans through which a number of individuals to whom Plaintiffs purported to have provided services received health benefits.

14.     It is admitted that High Crest Functional Medicine, LLC ("High Crest Functional") and Immunogen Diagnostics, LLC ("Immunogen") did not have contracts with Horizon and, therefore, did not participate in any of Horizon's physician networks during the period from March 1, 2011 to the present.

3

3681310-1

15.     The allegations of this paragraph are legal conclusions to which no response is required.  To the extent an answer is deemed required, the allegations are denied.

16.     Denied, as stated.  By way of further response, Horizon provides "in-network" health care benefits to its members/insureds through a network of "participating" medical providers who have entered into contracts with Horizon to render services to subscribers in return for fees set by the terms of the contract.  Medical providers who enter into contracts with Horizon are commonly known as "participating" providers, and the contracts between Horizon and participating providers require the participating provider to accept negotiated payment for covered services as payment in full and prohibit the provider from seeking additional payments from the patient.  The member/insured ordinarily has no financial obligation to the participating provider beyond a small, fixed copayment and/or a deductible.  Horizon members/insureds have ready access to participating providers.  Horizon publishes directories of participating providers to its members/insureds who consume health care services in New Jersey.  Members/insureds may obtain medical services from these providers with little or no financial risk or out-of-pocket expense.

17.     It is admitted that "non-participating providers", like High Crest and Immunogen, do not have a contract with Horizon.  It is further admitted that non-participating providers may collect whatever charge they negotiate with their patients at the time of service.  By way of further response, however, Horizon does have the ability, pursuant to the health benefit plans Plaintiffs are purportedly attempting to enforce by assignment, to deny and/or limit reimbursement for courses and types of treatments.

4

18.    It is admitted that non-participating providers may take an assignment of a patient's health benefits.  The nature and manner in which a beneficiary can legally assign benefits calls for a legal conclusion and, therefore, no response to these allegations is required.

19.    The allegations of this paragraph are legal conclusions to which no response is required.

20.    The allegations of this paragraph are legal conclusions to which no response is required.

21.    The allegations of this paragraph are legal conclusions to which no response is required.  To the extent a response is deemed required, Horizon is without sufficient knowledge to confirm or deny the allegations contained within this paragraph of the Complaint and leaves Plaintiffs to their proofs.

22.    Horizon admits only that it received, processed and/or paid claims submitted by Plaintiffs in reliance upon the health insurance claim forms submitted by Plaintiffs to procure payment.  Without reference to a specific claim or appeal, Horizon is without sufficient knowledge to confirm or deny the remaining allegations contained within this paragraph of the Complaint and leaves Plaintiffs to their proofs.

23.    The allegations of this paragraph are legal conclusions to which no response is required.  To the extent an answer is deemed required, the allegations are denied.

24.    The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

25.    The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

3681310-1

26.     Without reference to any specific claims or a definition of the phrase "virtually all claims", Horizon is without sufficient knowledge to confirm or deny the allegations contained within this paragraph of the Complaint and leaves Plaintiffs to their proofs.

27.     It is admitted that High Crest Functional's claims submitted to Horizon were placed on pre-payment review.   It is denied that pre-payment review is an "excuse for systematically denying all of the claims" High Crest Functional submitted.

28.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.   Horizon denies that said document constitutes an ERISA appeal.  It is further denied that any appeals properly submitted to Horizon have been ignored or improperly denied.

29.     It is specifically denied that Horizon maintained a policy of blanket denials at any time.  It is further denied that any payments were made by Horizon to High Crest "solely for purposes of this litigation in order to prevent Plaintiffs from asserting that Horizon was denying everything due to pending litigation."

30.     Without reference to any specific date, context or the identity of the individual who allegedly contacted Ms. McCarthy, Horizon is without sufficient knowledge to confirm or deny the allegations contained within this paragraph of the Complaint and leaves Plaintiffs to their proofs.

31.     Upon information and belief, the allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

32.     Upon information and belief, the allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

3681310-1

33.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

34.     Without reference to any context or the identity of the individual who allegedly asked Horizon to contact her to set up an audit date, Horizon is without sufficient knowledge to confirm or deny the allegations contained within this paragraph of the Complaint and leaves Plaintiffs to their proofs.

35.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

36.     Upon information and belief, the allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

37.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.   Horizon denies that said document constitutes an ERISA appeal.

38.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

39.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

40.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

41.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

42.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.   Horizon denies that said document constitutes an ERISA appeal.

43.     Upon information and belief, the allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

44.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.   Horizon denies that said document constitutes an ERISA appeal.

45.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

46.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

47.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

48.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

49.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

50.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

51.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.  By way of further response, the allegation

that evidence of the Plaintiffs' material misrepresentations has never been substantiated is specifically denied.

52.     Denied, as stated.  By way of further response, it is admitted only that on June 20, 2011, Megan McCarthy, on behalf of Horizon, went to the office of High Crest Functional's former attorney and copied business records.

53.     The allegations of this paragraph are denied.  By way of further response, on June 22, 2011, Megan McCarthy, on behalf of Horizon, went to the office of Immunogen's former attorney and copied business records.

54.     The allegations contained within the first sentence of this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.  By way of further response, it is denied that Horizon ever suspended the processing of any of High Crest Functional's claims.

55.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

56.     The allegations contained within this paragraph of the Complaint refer to a written document, the terms of which speak for themselves.

57.     It is admitted only that on July 7, 2011, counsel for Horizon and Megan McCarthy met with attorneys for High Crest Functional and Immunogen.

58.     It is admitted that during the July 7, 2011 meeting, Horizon's representatives indicated that Horizon had concerns relating to the Plaintiffs' business practices including: (a) misrepresentations of the provider of service on their health insurance claims forms; (b) unauthorized practice of medicine by unlicensed individuals; (c) the appropriateness and medical necessity of claims for which Plaintiffs submitted claims for reimbursement; (d) the submission

of claims for services not rendered and unbundled services; and (e) the corporate structure of High Crest Functional.

59.     The allegations of this paragraph are legal conclusions to which no response is required.  To the extent an answer is deemed required, the allegations are denied.

60.     The allegations of this paragraph are legal conclusions to which no response is required.

61.     The allegations of this paragraph are legal conclusions to which no response is required.  To the extent an answer is deemed required, the allegations are denied.

62.     The allegations of this paragraph are denied.

63.     Without reference to any specific claim, Horizon is without sufficient knowledge to confirm or deny the allegations contained within this paragraph of the Complaint and leaves Plaintiffs to their proofs.

64.     It is admitted that Horizon has, from time to time, denied payment to High Crest for office visits and to Immunogen for diagnostic tests.  Without any further reference to specific claims, however, Horizon is without sufficient knowledge to confirm or deny the allegations contained within this paragraph of the Complaint and leaves Plaintiffs to their proofs.

65.     Without reference to any specific claim, Horizon is without sufficient knowledge to confirm or deny the allegations contained within this paragraph of the Complaint and leaves Plaintiffs to their proofs.

66.     The allegations of this paragraph are legal conclusions to which no response is required.  To the extent an answer is deemed required, the allegations are denied.  By way of further response the Complaint fails to allege any factual basis for Horizon's "substantial conflict of interest" and that allegation is denied in any event.

67.     Horizon is without sufficient knowledge to confirm or deny the allegations contained within this paragraph of the Complaint and leaves Plaintiffs to their proofs.

68.     Horizon is without sufficient knowledge to confirm or deny the allegations that Plaintiffs have suffered substantial losses due to patients and other customers leaving as a consequence of Horizon's actions and leaves Plaintiffs to their proofs. By way of further response, the allegation that Horizon has engaged in reckless and/or vexatious conduct is a legal conclusion to which no response is required. To the extent a response is deemed required, the allegations are denied.

## COUNT I

69.     Horizon repeats and incorporates by reference its answers to all of the allegations contained in paragraphs 1 through 68 of Plaintiffs' Complaint.

70.     Horizon is without sufficient knowledge to confirm or deny the allegations contained within this paragraph of the Complaint and leaves Plaintiffs to their proofs. By way of further response, it is admitted that Plaintiffs submitted claims for healthcare services allegedly provided to beneficiaries under ERISA-governed group health plans, including at least one plan sponsored by Merck.

71.     Without reference to the health plans allegedly at issue, Horizon is without sufficient knowledge to confirm or deny the allegations contained within this paragraph of the Complaint and leaves Plaintiffs to their proofs.

72.     The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is deemed required, Horizon is without sufficient knowledge to confirm or deny whether Plaintiffs received assignments of benefits or other documentation sufficient to authorize the assignment of patients' benefits to Plaintiffs and leaves Plaintiffs to

their proofs.  By way of further response and to the extent a response to the allegation that Horizon is estopped from denying benefits due to any prior alleged conduct, the allegation is denied.

73.     The allegations of this paragraph are legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations are denied.

74.     The allegations of this paragraph are legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations are denied.

75.     The allegations of this paragraph are legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations are denied.

76.     The allegations of this paragraph are legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations are denied.

77.     The allegations of this paragraph are legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations are denied.

78.     The allegations of this paragraph are legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations are denied.

79.     The allegations of this paragraph are legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations are denied.

## COUNT II

80.     Horizon repeats and incorporates by reference its answers to all of the allegations contained in paragraphs 1 through 79 of Plaintiffs' Complaint.

81.     Without reference to any specific claim, beneficiary, plan or service, Horizon is without sufficient knowledge to confirm or deny the allegations contained within this paragraph of the Complaint and leaves Plaintiffs to their proofs.

3681310-1

82.    The allegations contained within this paragraph of the Complaint are not directed toward Horizon, accordingly, Horizon offers no answer to same.

83.    The allegations of this paragraph are legal conclusions to which no response is required.

84.    The allegations of this paragraph are legal conclusions to which no response is required.

85.    The allegations of this paragraph are legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations are denied.

86.    The allegations of this paragraph are legal conclusions to which no response is required.

87.     The allegations of this paragraph are legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations are denied.

88.    The allegations contained within this paragraph of the Complaint are not directed toward Horizon, accordingly, Horizon offers no answer to same.

89.    The allegations contained within this paragraph of the Complaint are not directed toward Horizon, accordingly, Horizon offers no answer to same.

90.    The allegations of this paragraph are legal conclusions to which no response is required.  To the extent a response is deemed required, the allegations are denied.

## COUNT III

91.    Horizon repeats and incorporates by reference its answers to all of the allegations contained in paragraphs 1 through 90 of Plaintiffs' Complaint.

92.    No response is required.

3681310-1

93.     The allegations of this paragraph are legal conclusions to which no response is required.

94.     The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is deemed required, the allegations are denied.

95.     The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is deemed required, the allegations are denied.

96.     The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is deemed required, the allegations are denied.

97.     It is specifically denied that "many of the details of Horizon's fraud investigation have not been disclosed to Plaintiffs" in light of the fact that Horizon's entire investigation file has been within the Plaintiffs' possession for over 2 years. The allegation that discovery is necessary to ascertain the full scope of Ms. McCarthy's defamatory utterances and publications is a blatant acknowledgment that Plaintiffs' cannot state a claim upon which relief can be granted.

98.     No response is required.

99.     The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is deemed required, the allegations are denied.

100.    The allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is deemed required, the allegations are denied. By way of further response, it is noted that despite the fact that the alleged conduct was despicable and subjected the Plaintiffs to cruel and unjust hardship, Plaintiffs have failed to allege a single statement made by Ms. McCarthy or any other representative of Horizon in support of Count III.

**WHEREFORE**, Horizon demands judgment dismissing the Complaint with prejudice, together with an award of attorney's fees and costs of suit.

> **CONNELL FOLEY LLP**
> Liberty View
> 457 Haddonfield Rd., Ste. 230
> Cherry Hill, NJ 08002
> (856) 317-7100
>
> *Attorneys for Defendant/Counterclaimant*
> *Horizon Blue Cross Blue Shield of New Jersey*
>
> /s/ *Thomas Vecchio*
> _____
> Thomas Vecchio, Esquire

Date: April 18, 2016

## AFFIRMATIVE DEFENSES

1.   The Complaint fails to state a claim upon which relief may be granted.

2.   The Complaint is barred because Plaintiffs lack standing to bring suit against Horizon.

3.   The Complaint is barred because Plaintiffs lack any contract with Horizon.

4.   The Complaint is barred and excluded by the express terms of the benefit plans and policies of insurance pursuant to which Horizon provides and/or administers health benefits.

5.   The Complaint is barred and excluded by Plaintiffs' breach of and failure to comply with the terms of the applicable health benefit plans.

6.   The Complaint is governed by the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001, et seq., and Plaintiffs are limited to the remedies thereunder as against Horizon which are limited to payment of the health benefits that were allegedly denied.

15

3681310-1

7.     The claims are expressly and completely preempted in whole or in part by Sections 502(a) and 514(a) of ERISA, 29 U.S.C. §§ 1132(a) and 1144(a).

8.     Plaintiffs failed to exhaust all appeal rights under the applicable health benefit plan, thus the Complaint is premature and must be dismissed.

9.     The claims are barred because Horizon fulfilled all its contractual obligations under the applicable health benefits plan.

10.     The claims are barred because Plaintiffs seek to recover for claims which are not eligible for coverage under the terms of the applicable health benefit plans.

11.     Plaintiffs' claims are barred by their unlawful and unlicensed operations in violation of New Jersey law.

12.     Plaintiffs' claims are barred because they are not eligible to receive payment for the services purportedly rendered under New Jersey law.

13.     Count III of the Complaint is barred because any statements by Defendant were truthful and made without malice and in good faith with a reasonable belief that they were true or were otherwise privileged.

14.     Plaintiffs' claims may be barred by the applicable statute of limitations.

15.     Plaintiffs' claims are barred by the equitable doctrines of waiver, latches and unclean hands.

16.     Plaintiffs' claims are barred because Horizon is authorized to recapture payments erroneously made by offsetting them against future claims under The Health Claims Authorization, Processing and Payment Act, *N.J.S.A.* 17:48E-10.1, et seq.

3681310-1

17.     Horizon reserves the right to amend its Answer to assert additional defenses and/or supplement, alter or change their answers upon completion of the appropriate investigation and discovery.

**WHEREFORE**, Defendant Horizon Blue Cross Blue Shield of New Jersey demands judgment dismissing the Complaint with prejudice, together with an award of attorney's fees and costs of suit.

<div style="margin-left:40%">

**CONNELL FOLEY LLP**
Liberty View
457 Haddonfield Rd., Ste. 230
Cherry Hill, NJ 08002
(856) 317-7100

*Attorneys for Defendant,*
*Horizon Blue Cross Blue Shield of New Jersey*

/s/ *Thomas Vecchio*
Thomas Vecchio, Esquire

</div>

Date: April 18, 2016

17

## COUNTERCLAIM

Defendant and Counterclaimant Horizon Blue Cross Blue Shield of New Jersey ("Horizon") files the following Counterclaim against Plaintiffs/Counterclaim Defendants High Crest Functional Medicine, LLC; Immunogen Diagnostics, LLC; Michael Segal, M.D.; and Neelendu Bose and against Additional Defendants on the Counterclaim High Crest, LLC; Stephanie Bose; High Crest Health; High Crest Medical; High Crest Integrative Medicine; John Does 1-10 and ABC Corporations 1-10, and states:

I.     **THE PARTIES**

   A.     **Horizon Blue Cross Blue Shield of New Jersey**

1.     Defendant and Counterclaimant Horizon is a health service corporation in New Jersey with its principal place of business at Three Penn Plaza East, Newark, New Jersey 07105. At all times material hereto, Horizon, among other things, provided health care benefits and insurance to members and paid health care insurance claims on behalf of its members.

2.     Horizon provides health care benefits to its members and insureds pursuant to a variety of health benefit plans and provides administrative services for self-funded health benefit plans.

3.     Under the terms of the benefit plans it issues and administers, Horizon only pays claims and provides coverage for eligible services rendered by eligible providers properly licensed to provide services under state law and has no obligation to pay claims or provide coverage for unlicensed services.

4.     At all times material hereto, Horizon paid health insurance claims to Counterclaim Defendants in reliance upon and as a result of insurance claims submitted by Counterclaim Defendants.

18

5.     Horizon is an insurer within the meaning of the New Jersey Insurance Fraud Prevention Act, *N.J.S.A.* 17:33A-1 *et seq.* ("IFPA").

**B.     The Individual Counterclaim Defendants**

6.     Counterclaim Defendant Neelendu  Bose (hereinafter from time to time referred to as "Neel" or "Neel Bose") is an individual and a resident of New Jersey.  Counterclaim Defendant Neel Bose is a lay person and is not licensed or authorized to provide medical services or treatment in New Jersey.

7.     Upon information and belief, at all material times hereto, Counterclaim Defendant Neel Bose was a member, officer and director of Counterclaim Defendants High Crest, LLC, Immunogen Diagnostics, High Crest Functional Medicine, LLC, High Crest Health, High Crest Medical and High Crest Integrative Medicine and provided medical services and treatment at these facilities.  Counterclaim Defendant Neel Bose directed, participated in, received benefits from, and is responsible for the unlawful activities of each of the Corporate Counterclaim Defendants.

8.     Counterclaim Defendant Stephanie Bose (hereinafter from time to time referred to as "Stephanie") is the wife of Counterclaim Defendant Neel Bose and is an individual and a resident of New Jersey. Counterclaim Defendant Stephanie Bose is a lay person and is not licensed or authorized to provide medical services or treatment in New Jersey.

9.     Upon information and belief, at all material times hereto, Counterclaim Defendant Stephanie Bose was a member, officer and director of Counterclaim Defendants High Crest, LLC, Immunogen Diagnostics, High Crest Functional Medicine, LLC, High Crest Health, High Crest Medical and High Crest Integrative Medicine.  Counterclaim Defendant Stephanie Bose directed, participated in, received benefits from, and is responsible for the unlawful activities of each of the Counterclaim and Defendant facilities.

19

10.     Counterclaim Defendant Michael Segal, D.O., (hereinafter from time to time referred to as "Segal") is a physician formerly licensed to practice medicine in the State of New Jersey and was and is subject to the laws which govern the practice of medicine in New Jersey. Dr. Segal is also licensed to practice medicine in the Commonwealth of Pennsylvania and maintains a separate practice at 2630 Holme Avenue, Philadelphia, Pennsylvania.

11.     Upon information and belief, Counterclaim Defendant Segal holds himself out as the owner of Counterclaim Defendant High Crest Functional and Medical Director of Counterclaim Defendant Immunogen Diagnostics.   Defendant Segal directed, participated in, received benefits from, and is responsible for the unlawful actives of Counterclaim Defendants High Crest Functional and Immunogen Diagnostics.

12.     Each of the individual Counterclaim Defendants is a person and/or practitioner under the IFPA and each of them committed, participated in, assisted in, conspired with or urged others to commit the wrongful acts set forth herein.  *N.J.S.A.* 17:33A-3.

**C.     The Corporate Counterclaim Defendants**

13.     Counterclaim Defendant Immunogen Diagnostics, LLC, was formed in 2010 and is an entity organized and existing under the laws of the State of New Jersey with its principal place of business located at 50 Fairfield Road, Fairfield, New Jersey.

14.     Counterclaim Defendant Immunogen Diagnostics, LLC, is a clinical laboratory and is registered with the Centers for Medicare & Medicaid Service.  Immunogen Diagnostics maintains a Certificate of Compliance under the Clinical Laboratories Improvement Act.

15.     Counterclaim Defendant Immunogen Diagnostics, LLC, is not a state licensed clinical laboratory and does not maintain a license under the New Jersey Clinical Laboratory Improvement Act, *N.J.S.A.* 45:9-42.26, *et seq.*

16.     At all material times hereto, Counterclaim Defendant Immunogen Diagnostics operated a non-participating laboratory and submitted, or caused to be submitted, health insurance claims to Horizon for payment.

17.     Counterclaim Defendant High Crest Functional Medicine, LLC, was formed in 2008 and is an entity organized and existing under the laws of the State of New Jersey with its principal place of business located at 50 Fairfield Road, Fairfield, New Jersey.  At all material times hereto, Counterclaim Defendant High Crest operated as a non-participating medical practice and submitted, or caused to be submitted, health insurance claims to Horizon for payment.

18.     Counterclaim Defendant High Crest, LLC, was formed in 2006 and is an entity organized and existing under the laws of the State of New Jersey with its principal place of business located at 50 Fairfield Road, Fairfield, New Jersey.  At all material times hereto, Counterclaim Defendant High Crest operated as a non-participating medical practice and submitted, or caused to be submitted, health insurance claims to Horizon for payment.

19.     High Crest, LLC maintains a small employer health benefit plan with Horizon to provide health benefits to eligible employees.  According to its application for health benefits, High Crest, LLC, is a "holistic wellness center."

20.     Counterclaim Defendant High Crest Health is an entity organized and existing under the laws of the State of New Jersey with its principal place of business located at 50 Fairfield Road, Fairfield, New Jersey.  According to the Certificate of Amendment filed with the New Jersey Department of Treasury, Division of Commercial Recording, High Crest Health is the alternate name of Counterclaim Defendant High Crest, LLC, and operated as a non-participating chiropractic practice.  At all material times hereto, Counterclaim Defendant High

21

Crest Health submitted, or caused to be submitted, health insurance claims to Horizon for payment.

21.     Counterclaim Defendant High Crest Medical is an entity organized and existing under the laws of the State of New Jersey with its principal place of business located at 50 Fairfield Road, Fairfield, New Jersey.  High Crest Medical operated as a non-participating medical practice.  At all material times hereto, Counterclaim Defendant High Crest Medical submitted, or caused to be submitted, health insurance claims to Horizon for payment.

22.     Counterclaim Defendant High Crest Integrative Medicine is an entity organized and existing under the laws of the State of New Jersey with its principal place of business located at 50 Fairfield Road, Fairfield, New Jersey.  High Crest Integrative Medicine operated as a non-participating medical practice.  At all material times hereto, Counterclaim Defendant High Crest Integrative Medicine submitted, or caused to be submitted, health insurance claims to Horizon for payment.

23.     Each of the individual Counterclaim Defendants is a person and/or practitioner under the IFPA and each of them committed, participated in, assisted in, conspired with or urged others to commit the wrongful acts set forth herein.  *N.J.S.A.* 17:33A-3.

## II.     THE SCHEME TO DEFRAUD

24.     Since at least as early as June 2007, Counterclaim Defendants entered into an unlawful scheme to defraud Horizon by engaging in the unauthorized and unlicensed practice of medicine in New Jersey; by submitting ineligible claims for services purportedly rendered by medical facilities in violation of the laws governing the practice of medicine; by engaging in the unlicensed practice of medicine; by submitting claims for unlicensed services; by engaging in a pattern of self-referral of patients to facilities in which each Counterclaim Defendant held a significant beneficial interest; by submitting claims for services not rendered; by submitting

22

claims for services that are not medically necessary; by submitting claims which misrepresented the patient's diagnosis; by submitting claims which misrepresented the provider of service; by submitting medical records which misrepresented the Medical Director of Immunogen Diagnostics; by forging prescriptions; by unbundling services and by double billing for services paid to another provider for the same services.

25.     As a result of Counterclaim Defendants' unlawful scheme to defraud, Horizon paid Counterclaim Defendants in excess of $1,678,000.00 on false insurance claims which were not eligible for payment under the statutes and regulations governing the practice of medicine and laboratories in New Jersey.   Furthermore, in submitting these claims, Counterclaim Defendants misrepresented the services provided or failed to disclose the information material to their right to payment, if any, on the claim.

26.     As a result of Counterclaim Defendants' unlawful scheme to defraud, Horizon paid Counterclaim Defendant High Crest $729,704.18 on false insurance claims which were not eligible for payment under the statutes and regulations governing the practice of medicine in New Jersey.  (Attached hereto as Exhibit "A" is a complete listing of each claim paid by Horizon to Counterclaim Defendant High Crest.)[1]

27.     As a result of Counterclaim Defendants' unlawful scheme to defraud, Horizon paid Counterclaim Defendant Immunogen Diagnostics $949,069.89 on false insurance claims which were not eligible for payment under the statutes and regulations governing the practice of

---

[1]     These exhibits identify the patient, date of service, billed procedure, stated diagnosis, paid date, claim, billed amount, paid amount and check number for each claim.  In order to protect the confidentiality of the patients purportedly treated by Counterclaim Defendants and Counterclaim Defendants and their medical records, Horizon has not identified these patients by name in this Counterclaim.   Concurrent with service of this Counterclaim, Horizon has produced a separate Patient Key which identifies each patient by name and member number.

medicine and laboratories in New Jersey. (Attached hereto as Exhibit "B" is a complete listing of each claim paid by Horizon to Counterclaim Defendant Immunogen Diagnostics.)

### A. The Sham Ownership of the Counterclaim Defendant Facilities

28. Beginning at least as early as 2006, Counterclaim Defendants Neel and Stephanie Bose and Dr. Segal entered into an unlawful scheme to establish, own and operate medical practices, chiropractic practices and a clinical laboratory in violation of the laws governing the practice of medicine, chiropractic and laboratories; to submit claims and receive payment for ineligible services purportedly rendered by these practices and laboratory; to employ physicians to pose as the owner and operator of these facilities to create the impression they were lawfully owned, operated and controlled by the appropriately licensed persons; to employ unlicensed persons to render treatment at these facilities; and to misappropriate the proceeds and profits of the facilities to Neel and Stephanie Bose.

29. Upon information and belief, Counterclaim Defendant High Crest, LLC, operates a medical practice and renders medical treatment and services to patients. In violation of the laws governing the practice of medicine in New Jersey, *N.J.A.C.* 13:35-2.6(d), Counterclaim Defendant High Crest, LLC, is owned by lay persons Neel and Stephanie Bose. According to its Certificate of Amendment filed with the New Jersey Department of Treasury, Division of Commercial Recording, Counterclaim Defendant High Crest, LLC, is managed by Neel and Stephanie Bose and its registered agent is Neel Bose.

30. Upon information and belief, High Crest, LLC, misrepresents itself as a management company to conceal its unauthorized and unlicensed practice of medicine through lay ownership and to channel payments received for the practice of medicine to Counterclaim Defendants Neel and Stephanie Bose.

31.     Counterclaim Defendant High Crest Functional Medicine operates a medical practice and is purportedly established, owned and operated by a licensed physician in accordance with the laws governing the practice of medicine in New Jersey. *N.J.A.C.* 13:35-2.6(d).

32.     Upon information and belief, High Crest Functional Medicine is actually owned by Counterclaim Defendants Neel and Stephanie Bose.   According to its Certificate of Formation, filed with the New Jersey Department of Treasury, Division of Revenue, Stephanie Bose is the registered agent and authorized representative of Counterclaim Defendant High Crest Functional Medicine, LLC.  Counterclaim Defendant Neel Bose obtained the national provider indexing number for High Crest Functional Medicine.

33.     Upon information and belief, Counterclaim Defendants Neel and Stephanie Bose employ Counterclaim Defendant Segal and Counterclaim Defendant Segal acts as an accommodating physician to lend his name to claims submitted by the Counterclaim Defendants in order to mislead Horizon into believing that Segal owned and operated High Crest Functional Medicine and that the facility is eligible to render treatment and receive payment.

34.     Counterclaim Defendant Immunogen Diagnostics operates a laboratory and purportedly employs Counterclaim Defendant Segal as the Medical Director to appear that the laboratory is lawfully operated and controlled.

35.     According to records of the State of New Jersey, Counterclaim Defendant Neel Bose is the reported officer, director and managing member of Counterclaim Defendant Immunogen Diagnostics, LLC, and the registered agent for this entity.

36.     Upon information and belief, Counterclaim Defendants Neel and Stephanie Bose employ Counterclaim Defendant Segal and Counterclaim Defendant Segal acted as an

25

accommodating physician to lend his name to claims submitted by the Counterclaim Defendant Immunogen Diagnostics in order to mislead Horizon into believing that Segal is the Medical Director of the laboratory and that it is eligible to provide services and receive payment.

37.    Upon information and belief, Counterclaim Defendants Neel and Stephanie Bose misappropriated the name of Babar K. Rao, M.D., and misrepresented that Dr. Rao was the Medical Director of Counterclaim Defendant Immunogen Diagnostics.

38.    Upon information and belief, Counterclaim Defendants misrepresented that Dr. Rao was the Medical Director of Counterclaim Defendant Immunogen Diagnostics on medical records submitted to Horizon to conceal that Counterclaim Defendant Segal was listed as the Medical Director of Immunogen Diagnostics and the referring physician which would thereby violate New Jersey's prohibition on self-referrals.

39.    Dr. Rao has never been the Medical Director of and was never associated with Counterclaim Defendant Immunogen Diagnostics.    Counterclaim Defendant Immunogen Diagnostics submitted claims to Horizon and procured payment for claims for which the underlying medical records lists Dr. Rao as the Medical Director.

40.    At all times material hereto, Counterclaim Defendants High Crest, LLC; High Crest Functional Medicine, LLC, High Crest Health; High Crest Medical and High Crest Integrative Medicine received payment from Horizon for claims submitted and deposited the check into a bank account owned by High Crest, LLC.  The bank account pursuant to which all deposits were made is also the bank account maintained by High Crest, LLC, to pay its premiums for its small employer health benefit plan with Horizon.

B.    **Counterclaim Defendants' Submission of False Health Insurance Claims in Violation of the New Jersey Insurance Fraud Prevention Act and Common Law**

      1.    **The False Representations Made by Counterclaim Defendants**

41.    At all times material hereto, Horizon paid health care insurance claims to Counterclaim Defendants pursuant to and in reliance upon insurance claims which they submitted to Horizon.

42.    In submitting insurance claims to Horizon for payment, Counterclaim Defendants used standard billing forms commonly known as a HCFA/CMS 1500 which identified the diagnosis made by use of numerical International Classification of Diseases ("ICD") codes and described the medical services for which they sought payment by use of numeric Current Procedural Terminology ("CPT") codes.  (A copy of a form HCFA/CMS 1500 is attached hereto as Exhibit "C".)

43.    In submitting claims for payment to Horizon, Counterclaim Defendants expressly represented that they were authorized and licensed to provide the services described in the claims; that they had performed the services billed; that the information and statements contained in the claims submitted were true, correct and complete; that the services rendered were medically indicated and necessary; that the amounts billed were actually incurred by the patient; and that the claims submitted were eligible for payment under the laws and regulations governing the practice of medicine and laboratories in New Jersey.

44.    In submitting claims for payment to Horizon, Counterclaim Defendants intended that Horizon rely on the claim forms and representations contained therein in issuing payment for the services billed and Horizon reasonably relied on the representations in issuing payment on the claims.

3681310-1

## 2. Counterclaim Defendants' Submission of Claims for Unlicensed and Unlawful Services Rendered at the Counterclaim Defendant Facilities

45.    Beginning at least as early as June 2007, Counterclaim Defendants submitted ineligible claims for medical services, patient consultations and other services purportedly rendered by or at each of the Counterclaim Defendant facilities.

46.    New Jersey law, among other things, prohibits the unlicensed practice of medicine by persons other than duly licensed physicians individually or through practice structures specifically approved by the Board of Medical Examiners.  N.J.A.C. 13:35-6.16.

47.    In addition to the general prohibitions and requirements imposed on the practice of medicine in New Jersey, N.J.A.C. 13:35-2.6 specifically requires that facilities like High Crest, LLC; High Crest Functional Medicine, LLC; High Crest Health; High Crest Medical and High Crest Integrative Medicine, be owned by and under the responsibility of one or more licensed physicians.

48.    Counterclaim Defendants High Crest, LLC; High Crest Functional Medicine, LLC; High Crest Health; High Crest Medical and High Crest Integrative Medicine were not and are not eligible to provide or receive payment for medical services because, among other reasons, they are not owned or operated by a licensed physician; they are owned and operated by Neel and Stephanie Bose, lay persons.

49.    As a result of Counterclaim Defendants' submission of ineligible and unlawful claims, they received nearly $730,000, in payments from Horizon to which they were not entitled.  (Exhibit "A")

## 3. Counterclaim Defendants' Submission of Claims for Unlicensed and Unlawful Services Rendered at Immunogen Diagnostics

50.    Counterclaim Defendant Immunogen Diagnostics is a laboratory that operates in New Jersey and subject to the statutes and regulations of the state.

3681310-1

i. **Immunogen's Unlawful Lay Ownership in Violation of New Jersey Rules and Regulations**

51.     A laboratory, like Immunogen Diagnostics, must be under the control of a Medical Director that is licensed to practice medicine in the State of New Jersey.

52.     Upon information and belief, Counterclaim Defendant Immunogen Diagnostics was created to refer patients of Counterclaim Defendant High Crest to the laboratory for unnecessary and non-medically necessary tests.

53.     Counterclaim Defendant Immunogen Diagnostic is not operated by a Medical Director licensed to practice medicine in the State of New Jersey; it is under the complete and direct control of Counterclaim Defendants Neel and Stephanie Bose, lay persons.

54.     Upon information and belief, Counterclaim Defendant Michael Segal, D.O. lends his name as the Medical Director of Immunogen Diagnostics for the purpose of leading Horizon and others to believe that the laboratory is lawfully operated and under the control of a physician. Counterclaim Defendant Segal is not the Medical Director of Immunogen Diagnostics, does not operate the laboratory and has no control over the laboratory.

55.     Counterclaim Defendants misappropriated the name of Babar K. Rao and misrepresented that Dr. Rao was the Medical Director of Counterclaim Defendant Immunogen Diagnostic.  Counterclaim Defendants submitted claims to Horizon and received payment for services for which the underlying medical records falsely identified Dr. Rao as the Medical Director of Counterclaim Defendant Immunogen Diagnostic.

56.     Counterclaim Defendants were not and are not eligible to provide or receive payment for laboratory services rendered at Counterclaim Defendant Immunogen Diagnostic because, among other reasons, the laboratory is not under the control of a licensed physician; it is operated and controlled by Neel and Stephanie Bose, lay persons.

29

ii.   **Immunogen's Unlicensed Operations in Violation of New Jersey Rules and Regulations**

57.   *N.J.S.A.* 45:9-42.28 provides that "No person shall conduct, maintain, or operate a laboratory or solicit or accept specimens for laboratory examination unless license therefore has been obtained from the department pursuant to the terms of this act."

58.   *N.J.S.A.* 45:9-42.31 provides that "the owner and director of a clinical laboratory shall be jointly and separately responsible for its compliance with the act and regulations as may be promulgated hereunder."

59.   *N.J.S.A.* 45:9-42.42(a) provides that "No person shall operate, maintain, direct or engage in the business of operating a clinical laboratory, as herein defined, unless he has obtained a clinical laboratory license from the [State Department of Health], or is exempt."

60.   Counterclaim Defendants operate Immunogen Diagnostic as a clinical laboratory in New Jersey.

61.   In violation of *N.J.S.A.* 45:9-42.28 and *N.J.S.A.* 45:9-42.42(a), Counterclaim Defendant Immunogen Diagnostic is not currently licensed with the New Jersey State Department of Health (the "Department") and has never been licensed with the Department under the New Jersey Clinical Laboratory Improvement Act.

62.   Counterclaim Defendants Neel Bose, Stephanie Bose and Michael Segal are jointly and separately responsible for Counterclaim Defendant Immunogen Diagnostic's unlawful and unlicensed operation under *N.J.S.A.* 45:9-42.31.

63.   *N.J.S.A.* 45:9-42.42(a) provides that a person who collects any amounts that were billed in violation of the act "shall refund on a timely basis to the person who was billed, any amounts so collected" and Horizon is entitled to reimbursement of all monies paid to Counterclaim Defendant Immunogen Diagnostic for unlicensed services.

30

64.   As a result of Counterclaim Defendants' submission of ineligible and unlawful claims rendered at Counterclaim Defendant Immunogen Diagnostic, they received nearly $950,000, in payments from Horizon to which they were entitled.  (Exhibit "B")

**4.   Counterclaim Defendants' Submission of Claims for Services Rendered By Unlicensed Personnel**

65.   Counterclaim Defendants submitted claims to Horizon and received reimbursement for medical services purportedly performed by a physician, but were in fact unlawfully rendered by lay persons.

66.   Counterclaim Defendants submitted claims for and received reimbursement for patient evaluation and management consultations and steroid injections purportedly performed by Counterclaim Defendant Segal.

67.   The patient evaluation and management consultations and steroid injections purportedly performed by Counterclaim Defendant Segal for which Counterclaim Defendants submitted claims and received payment were rendered by unlicensed persons and practitioners.

68.   The persons who performed the medical services on the Counterclaim and Counterclaim Defendant facilities were not licensed to provide medical services, like steroid injections, or treat and diagnose patients for which Counterclaim Defendants submitted claims and received payment.

69.   Upon information and belief, Counterclaim Defendant Neel Bose treated patients, including administering injections and performing patient consultations and evaluations.

70.   Upon information and belief, Counterclaim Defendants Neel and Stephanie Bose forged the signature of Counterclaim Defendant Michael Segal and authored prescriptions to patients under Dr. Segal's name.

3681310-1

71.     Counterclaim Defendants employed other unlicensed persons and practitioners to administer injections and perform patient consultations and evaluations at the Counterclaim and Counterclaim Defendant facilities.

72.     Counterclaim Defendant Segal did not supervise the medical services provided by unlicensed persons and practitioners at Counterclaim Defendant facilities.

73.     Counterclaim Defendant Segal was not present when unlicensed persons and practitioners provided medical services at the Counterclaim Defendant facilities.

74.     Counterclaim Defendant Segal was actively practicing at his Pennsylvania practice while medical services were being rendered at the Counterclaim Defendant facilities by unlicensed persons and practitioners.

75.     No licensed physician or practitioner supervised the medical services provided by unlicensed persons and practitioners at the Counterclaim Defendant facilities.

76.     No licensed physician or practitioner was present when unlicensed persons and practitioners provided medical services at the Counterclaim Defendant facilities.

77.     The medical services rendered by unlicensed personnel at the Counterclaim Defendant facilities are not eligible for reimbursement.

78.     From at least as early as June 2007, Counterclaim Defendants obtained payment for claims submitted for services rendered by unlicensed persons and practitioners to which they were not entitled.

> **5.     Counterclaim Defendant Immunogen Diagnostics' Submission of Duplicate Claims for the Same Services Paid to, and Performed by, an Unrelated Provider**

79.     Beginning at least as early as 2010, Counterclaim Defendant Immunogen Diagnostics submitted multiple claims and received payments for the same services rendered to the same patient on the same date of service by another provider, Manhattan Physician

3681310-1

Laboratories.  Horizon paid Manhattan Physician Laboratories for the services that were double billed by Counterclaim Defendant Immunogen Diagnostics.

80.    As a result of Counterclaim Defendant Immunogen Diagnostics' submission of claims for services rendered by another laboratory, Horizon paid Counterclaim Defendant Immunogen Diagnostics in excess of $150,000 to which it was not entitled.  (A statement of the duplicative claims submitted to and paid by Horizon is attached hereto as Exhibit "D.")

6.    **Counterclaim Defendants' Submission of Claims for Services Not Rendered**

81.    Beginning at least as early as 2010, Counterclaim Defendants submitted insurance claims to Horizon for laboratory tests not rendered by Immunogen Diagnostics.

82.    In submitting insurance claims to Horizon, Counterclaim Defendants used CPT 83001 and 83002 (Pituitary Gonadotropin), 83735 (Magnesium), 84270 (Sex Hormone Binding Gobulin) and 84702 (Chorionic Gonadotropin Test) to describe the test performed at Immunogen Diagnostics.

83.    Although Counterclaim Defendants submitted claims for CPT 83001, 83002, 83735, 84270 and 84702, the patient medical records reveal that no such test were performed.

84.    As a result of Counterclaim Defendants' submission of claims for tests not performed at Immunogen Diagnostics, they procured in excess of $137,453.72 in reimbursements for tests not rendered and to which they were not entitled.  (A statement of the claims submitted to and paid by Horizon for services not rendered is attached hereto as Exhibit "E").

33

7.     **Counterclaim Defendants' Submission of Claims for Unbundled Services Rendered at Immunogen Diagnostics**

85.     Beginning at least as early as 2010, Counterclaim Defendants submitted insurance claims to Horizon for services rendered at Immunogen Diagnostics which "unbundled" claims to obtain greater payment than that to which they were entitled.

86.     The uniform insurance claim form used by Counterclaim Defendants to submit claims to Horizon required them to identify the services performed by reference to a Current Procedural Terminology ("CPT") code.

87.     The CPT Manual provides CPT codes to describe laboratory test "panels" performed by clinical laboratories and the specific laboratory tests included within the panel.

88.     Counterclaim Defendants submitted health insurance claims to Horizon for the performance of a General Health Panel described by CPT 80050.

89.     The General Health Panel described by CPT 80050 "must include" performance of component tests, including a Comprehensive Metabolic Panel (described by CPT 80053) and Thyroid Stimulating Hormone (TSH) (described by CPT 84443).   (A copy of CPT 80050 is attached hereto as Exhibit "F.")

90.     The charges for performance of the General Health Panel described by CPT 80050 include any charge for performance of a Comprehensive Metabolic Panel (CPT 80053) Alkaline Phosphates (CPT 84075), Complete Blood Count (CPT 85025), Transfer ase (CPT 84450 and 84460) and Thyroid Stimulating Hormone (TSH)(CPT 84443) and the reimbursement paid for the General Health Panel includes reimbursement for these component tests.

91.     In submitting health insurance claims to Horizon, Counterclaim Defendants "unbundled" its services and double-billed Horizon for the General Health Panel (CPT 80050) and for its component tests (CPT 80053, 84075, 85025, 84450, 84460 and 84443).

34

92.    As a result of Counterclaim Defendants' submission of health insurance claims which unbundled and double-billed for the performance of a General Health Panel (CPT 80050) and its component parts, Horizon paid Counterclaim Defendants the sum of $46,714.49, to which they were not entitled.   (A statement of the claims submitted to and paid by Horizon for unbundled claims is attached hereto as Exhibit "G").

### 8.    Counterclaim Defendants' Submission of Claims for Non-Medically Necessary Services

93.    Beginning at least as early as 2010, Counterclaim Defendants submitted insurance claims to Horizon for services that were not medically necessary or justified by the needs of the patient to obtain to which they were not entitled.

94.    In submitting claims to Horizon to procure payment, Counterclaim Defendants represented that the services were medically indicated and necessary.

95.    As part of this scheme, Counterclaim Defendants treated patients for weight loss by prescribing a combination of B12 injections, Human Chorionic Gonatotropin ("HCG") and Methionine Inositol Choline ("MIC") Therapy and submitted claims to Horizon for the B12 injections.

96.    In submitting claims to Horizon for B12 injections, Counterclaim Defendants represented to Horizon that the patients suffered from B12 deficiency, anemia, malaise and/or fatigue.

97.    The medical records of the patients demonstrate that they did not suffer from B12 deficiency, anemia, malaise and/or fatigue, the diagnoses which Counterclaim Defendants represented on the health insurance claims submitted to Horizon to procure payment for the B12 injections.

35

98.     Despite the fact that Counterclaim Defendants submitted claims which represented that the patients suffered from B12 deficiency, Counterclaim Defendant Immunogen Diagnostics never rendered tests to confirm that the patients suffered from B12 deficiency.

99.     Because the patients for whom Counterclaim Defendants submitted claims for B12 injections did not suffer from B12 deficiency, the B12 injections were not medically necessary and not supported by the needs of the patients.

100.    In submitting claims to Horizon which represented that the patients suffered from B12 deficiency (or other diagnoses), Counterclaim Defendants misrepresented the diagnosis of the patients to procure payment to which they were not entitled.

101.    Horizon reasonably relied on the diagnosis represented by Counterclaim Defendants on the health insurance claims in issuing payment to them for B12 injections.

102.    As a result of Counterclaim Defendants' submission of health insurance claims which misrepresented the diagnosis of the patients and that the services were medically necessary, Horizon paid Counterclaim Defendants amounts to which they were not entitled.

**C.     Counterclaim Defendants' Unlawful Administering of Steroids**

103.    N.J.A.C. 13:35-7.9(a) provides that "[u]nless an accepted medical necessity exists, a practitioner shall not prescribe, order, dispense, administer, sell or transfer any anabolic steroid or human growth hormone, for the purpose of hormonal manipulation intended to increase muscle mass, strength or weight.  Body building, muscle enhancement, or increasing muscle bulk or strength through the use of anabolic steroids or human grown hormone by a person in good health for the intended purpose of improving performance in any form or exercise, sport or game is not a valid medical purpose."

104.    Beginning as early as 2010, Counterclaim Defendants entered into a scheme to defraud Horizon by providing patients with anabolic steroids including Nandorolone Deconoate

36

without any existing medical necessity, by falsifying medical records, and by submitting health insurance claims which misrepresented the patient's diagnosis in order to procure reimbursement from Horizon for unlawful medical services.  In addition, Counterclaim Defendants concealed and failed to disclose information which affected the right to payment for these unlawful services steroid injections.

105.    Beginning at least as early as 2010, Counterclaim Defendants, among other things, knowingly and intentionally prescribed and injected patients with anabolic steroids, including Nandrolone Deconoate, even though the steroids were not medically necessary and were not supported by the patient's diagnosis.

106.    In order to justify their unlawful prescription and injection of anabolic steroids including Nandrolone Deconoate, Counterclaim Defendants misrepresented that patients suffered from fatigue; malaise; undefined pain in an extremity, usually the shoulder, knee back or elbow; anemia; other testicular hypofunction; and from other undefined conditions when the patient did not suffer from these conditions.

107.    Counterclaim Defendants concealed and failed to disclose that the patient did not suffer from any condition for which the injection of anabolic steroids was necessary, appropriate and lawful, and that the injections were for unlawful and non-medical purposes.

108.    In violation of N.J.A.C. 13:35-7.9(b), the Counterclaim Defendants failed to prepare and maintain medical records which accurately reflected the injection of anabolic steroids including Nandrolone Deconoate, the diagnosis made, the basis for the diagnosis and the purpose for which the drugs were prescribed.

109.    Beginning at least as early as 2010, Counterclaim Defendants knowingly solicited patients seeking anabolic steroids in order to increase their patient population and their billings.

110.   In reasonable reliance on the claims submitted by Counterclaim Defendants for unlawful steroid injections, Horizon amounts in excess of that to which they were entitled for unlawful and non-medically necessary anabolic steroid injections.

**D.   Counterclaim Defendants' Unlawful Self-Referrals and Payment of Referral Fees**

111.   At all times material hereto, Counterclaim Defendants Neel and Stephanie Bose held a significant beneficial interest in Counterclaim Defendants and High Crest, LLC; Immunogen Diagnostics; High Crest Functional Medicine, LLC; High Crest Health; High Crest Medical and High Crest Integrative Medicine, received all or a portion of the revenues these entities, and, together with Counterclaim Defendants Segal, actually received payments for services billed by the Counterclaim Defendant facilities.

112.   N.J.S.A. 45:9-22.5 and N.J.A.C. 13:44E-2.6 prohibit Counterclaim Defendants from referring any patient to any practice or facility in which they hold or held any significant beneficial interest, including Counterclaim Defendant Immunogen Diagnostics.

113.   N.J.A.C. 13:44E-3.3 prohibits Counterclaim Defendants from referring patients for medical services to practitioners located at the same premises, including Counterclaim Defendant Immunogen Diagnostics.

114.   N.J.S.A. 45:9-22.5 and N.J.A.C. 13:35-6.17 prohibits Counterclaim Defendant Immunogen Diagnostics from paying any referral fee or other thing of value to Counterclaim Defendants for the referral of any patient.

115.   In violation of N.J.S.A. 45:9-22.5, N.J.A.C. 13:44E-2.6 and N.J.A.C. 13:44E-3.9, Counterclaim Defendants referred most, if not all, patients to Counterclaim Defendant Immunogen Diagnostics for laboratory testing and other services.

3681310-1

116.    In violation of N.J.S.A. 45:9-22.5 and N.J.A.C. 13:35-6.17, Counterclaim Defendants Immunogen Diagnostics paid referral fees to Counterclaim Defendants for the referral of patients.

117.    Counterclaim Defendants are the only referral sources for Counterclaim Defendant Immunogen Diagnostics.

118.    Counterclaim Defendants failed to disclose to Horizon or to the referred patient that they held a significant interest in Counterclaim Defendant Immunogen Diagnostics.

119.    Since at least as early as 2010, Horizon paid Counterclaim Defendants Immunogen Diagnostics in excess of nearly $950,000, in claims for patients referred by Counterclaim Defendant.  (Exhibit "B").

## COUNT ONE
### Insurance Fraud

120.    Horizon repeats and incorporates herein by reference the allegations contained in Paragraphs 1 through 119 of this Counterclaim.

121.    Since at least as early as June 2007, Counterclaim Defendants Neel Bose; High Crest LLC; Immunogen Diagnostics; Dr. Michael Segal; High Crest Functional Medicine, LLC; Stephanie Bose; High Crest Health; High Crest Medical; and High Crest Integrative Medicine, entered into a scheme to defraud Horizon through the submission of a pattern of false, misleading and incomplete insurance claims in violation of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1, et seq. ("IFPA").

122.    At all times material hereto, Horizon was an insurance company within the meaning of the IFPA and paid insurance claims in reasonable reliance on the false, misleading and incomplete claims submitted by Counterclaim Defendants.

39

123.    At all times material hereto, each of the Counterclaim Defendants was a person or practitioner within the meaning of the IFPA and each of them committed, participated in, solicited others to engage in, and knowingly assisted, conspired with or urged others to commit the fraudulent and wrongful acts set forth herein.

124.    In violation of the IFPA, Counterclaim Defendants submitted written bills, statements and claim forms for services knowing that the bills, statements and claim forms contained false and misleading information material to the claim.   In addition, Counterclaim Defendants concealed and knowingly failed to disclose material events, occurrences and other information which affected their right to payment.

125.    In submitting insurance claims for payment to Horizon, Counterclaim Defendants used standard insurance claim forms commonly known as form HCFA/CMS 1500.

126.    For each claim submitted, Counterclaim Defendants expressly represented that they had performed the services billed; that the services were performed to treat the identified condition or disease; that the information and statements contained in the claims submitted were true, correct and complete; that the services rendered were medically indicated and necessary; that the amounts billed were actually incurred by the patient; and that Counterclaim Defendants were authorized and properly licensed to perform and submit claims for the services in accordance with the laws governing the practice of medicine, chiropractic and laboratories in New Jersey.

127.    In submitting insurance claims forms to Horizon for payment, Counterclaim Defendants acted knowingly and intended that Horizon rely on the information contained in the false insurance claim forms in issuing payment on the claim.

3681310-1

128.    In submitting insurance claims to Horizon for payment, Counterclaim Defendants violated the IFPA and committed insurance fraud by knowingly and intentionally:

a.    Engaging in the unlawful practice of medicine and submitting insurance claims for unlawful and ineligible services;

b.    Engaging in the unlawful self-referral of patients and submitting insurance claims for unlawful and ineligible services;

c.    Submitting insurance claims for ineligible services rendered by unlicensed personnel;

d.    Submitting insurance claims for unlicensed services;

e.    Submitting insurance claims which misrepresented the services provided;

f.    Submitting insurance claims which misrepresented the patient's diagnosis;

g.    Submitting insurance claims for services not rendered and not medically necessary;

h.    Submitting insurance claims for "unbundled" services;

i.    Submitting insurance claims for duplicative services paid to another provider for the same services; and

j.    Caused claims for forged prescriptions to be submitted to Horizon for payment.

129.    Attached hereto as Exhibits "A" and "B" are complete statements of each false insurance claim submitted by Counterclaim Defendants Neel Bose; High Crest, LLC; Immunogen Diagnostics; Dr. Michael Segal; High Crest Functional Medicine, LLC; Stephanie Bose; High Crest Health; High Crest Medical and High Crest Integrative Medicine.

130.    In submitting insurance claims to Horizon, Counterclaim Defendants concealed and failed to disclose the scheme to defraud and unlawful acts set forth above; the actual

41

condition or diagnosis of the patient; the actual services provided; and the violations of law and regulation committed by Counterclaim Defendants.

131.   The information concealed and not disclosed by Counterclaim Defendants was material to the claims submitted, affected the right to payment of the claims, and, if disclosed, would have caused Horizon to deny payment for the claims submitted.

132.   As a result of Counterclaim Defendants' scheme to defraud and pattern of violations of the IFPA, Horizon has suffered damages, including but not limited to, all amounts paid for false and incomplete claim forms submitted by Counterclaim Defendants, the costs of investigation, counsel fees and other losses.

133.   Pursuant to N.J.S.A. 17:33A-7, Horizon is entitled to all compensatory damages, including not limited to all amounts paid on false or incomplete claims, its costs of suit and attorneys' fees, and is entitled to recover treble damages because Counterclaim Defendant engaged in a pattern of violations of the Act.

**WHEREFORE**, Defendant and Counterclaimant Horizon Blue Cross Blue Shield of New Jersey demands judgment in its favor and against Counterclaim Defendants Neelendu Bose; High Crest, LLC; Immunogen Diagnostics; Dr. Michael Segal; High Crest Functional Medicine, LLC; Stephanie Bose; High Crest Health; High Crest Medical; and High Crest Integrative Medicine, for all its damages, including costs of suit and attorneys' fees, and for treble damages under the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 et seq.

## COUNT TWO
### Common Law Fraud

134.   Horizon repeats and incorporates herein by reference the allegations contained in Paragraphs 1 through 133 of this Counterclaim.

3681310-1

135.    Since at least as early as June 2007, Counterclaim Defendants entered into a scheme to defraud Horizon through a pattern of false and misleading billing.

136.    As part of this scheme to defraud, Counterclaim Defendants intentionally submitted false insurance claims to Horizon and procured payment for the services for which they submitted the claims.

137.    In submitting insurance claims to Horizon for payment, Counterclaim Defendants violated the IFPA and committed common law fraud by knowingly and intentionally:

    a.    Engaging in the unlawful practice of medicine and submitting insurance claims for unlawful and ineligible services;

    b.    Engaging in the unlawful self-referral of patients and submitting insurance claims for unlawful and ineligible services;

    c.    Submitting insurance claims for ineligible services rendered by unlicensed personnel;

    d.    Submitting insurance claims for unlicensed services;

    e.    Submitting insurance claims which misrepresented the services provided;

    f.    Submitting insurance claims which misrepresented the patient's diagnosis;

    g.    Submitting insurance claims for services not rendered and not medically necessary;

    h.    Submitting insurance claims for "unbundled" services;

    i.    Submitting insurance claims for duplicative services paid to another provider for the same services; and

    j.    Caused claims for forged prescriptions to be submitted to Horizon for payment.

138.   As part of this scheme to defraud, Counterclaim Defendants submitted insurance claims for ineligible services and in violation of the laws which govern the practice of medicine and laboratories in New Jersey.

139.   In reasonable reliance on the false claims submitted by Counterclaim Defendants, Horizon paid in excess of $1,678,000, in claims for services not covered or eligible for payment.

140.   As a result of Counterclaim Defendants' fraud, Horizon has suffered damages including, but not limited to all amounts paid for insurance claims submitted by Counterclaim Defendants.

141.   The harm suffered by Horizon was actuated by bad faith and actual malice, that is intentional wrongdoing and Horizon is entitled to receive punitive damages pursuant to N.J.S.A. 2A:15-5.10.

**WHEREFORE**, Defendant and Counterclaimant Horizon Blue Cross Blue Shield of New Jersey demands judgment in its favor and against Counterclaim Defendants Neelendu Bose; High Crest, LLC; Immunogen Diagnostics; Dr. Michael Segal; High Crest Functional Medicine, LLC; Stephanie Bose; High Crest Health; High Crest Medical; and High Crest Integrative Medicine, for all its damages, including costs of suit and attorneys' fees, and for treble damages under the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 et seq.

### COUNT THREE
### Negligent Misrepresentation

142.   Horizon repeats and incorporates herein by reference the allegations contained in Paragraphs 1 through 141 of this Counterclaim.

143.   Counterclaim Defendants knew or should have known, or were deliberately ignorant that the claims submitted misrepresented the actual services rendered and that this would cause Horizon to issue payment for claims that were not covered or eligible for payment.

44

3681310-1

144.     Counterclaim Defendants had a duty and responsibility to verify the accuracy and completeness of information contained on claims forms submitted to Horizon.

145.     Horizon foreseeably and reasonably relied on Counterclaim Defendants' representations to its detriment in issuing payment on claims submitted by them for payment.

146.     The actions of Counterclaim Defendants constitute negligence, and were the direct and proximate cause of damage to Horizon.

147.     As of a result of Counterclaim Defendants' negligence, Horizon has suffered damages, including but not limited to amounts paid to Counterclaim Defendant for services not performed or necessary.

**WHEREFORE**, Defendant and Counterclaimant Horizon Blue Cross Blue Shield of New Jersey demands judgment in its favor and against Counterclaim Defendants Neelendu Bose; High Crest, LLC; Immunogen Diagnostics; Dr. Michael Segal; High Crest Functional Medicine, LLC; Stephanie Bose; High Crest Health; High Crest Medical; and High Crest Integrative Medicine, for all its damages, including costs of suit and attorneys' fees, and for treble damages under the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 et seq.

## COUNT FOUR
### Conspiracy

148.     Horizon repeats and incorporates herein by reference the allegations contained in Paragraphs 1 through 147 of this Counterclaim and Third Party Complaint.

149.     Beginning as early as September 2007, each of the Counterclaim Defendants entered into an agreement and conspiracy to defraud Horizon through a common scheme and pattern of false and misleading billing and claims in violation of the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1, et seq. ("IFPA").

45

150.     Pursuant to this agreement and conspiracy in violation of the IFPA, each of the Counterclaim Defendants, individually and collectively, submitted written bills, statements and claim forms for services knowing that the bills, statements and claim forms contained false and misleading information material to the claim.  In addition, each of the Counterclaim Defendants concealed and knowingly failed to disclose material events, occurrences and other information which affected their right to payment.

151.     As part of this conspiracy, each of the Counterclaim Defendants agreed to establish sham corporations to bill and receive payment for services not eligible for payment under the laws governing the practice of medicine and laboratories.

152.     As part of this conspiracy, each of the Counterclaim Defendants agreed to render services by unlicensed persons.

153.     As part of this conspiracy, each of the Counterclaim Defendants agreed to refer laboratory services to a laboratory in which they held significant financial interest.

154.     As part of this conspiracy, each of the Counterclaim Defendants agreed to submit claims for false and fraudulent services which misrepresented the patient's diagnosis, for medically unnecessary services, for unbundled services and for duplicative services.

155.     As part of this conspiracy, each of the Counterclaim Defendants agreed to submit claims for services rendered by a laboratory that was not properly licensed by the Department in violation of laws governing laboratories in the State of New Jersey.

156.     As a result of Counterclaim Defendants' conspiracy to defraud and pattern of violations of the IFPA, Horizon has suffered damages, including but not limited to, all amounts paid for billed procedures, the costs of investigation and other losses.

157.    The harm suffered by the Horizon was actuated by bad faith and actual malice, that is intentional wrongdoing.   As such, Horizon is entitled to receive punitive damages pursuant to N.J.S.A. 2A:15-5.10.

158.    Pursuant to N.J.S.A. 17:33A-7, Horizon is entitled to all compensatory damages, including not limited to their costs of suit and attorneys' fees, and is entitled to recover treble damages because Counterclaim Defendants engaged in a pattern of violations of the Act.

**WHEREFORE**, Defendant and Counterclaimant Horizon Blue Cross Blue Shield of New Jersey demands judgment in its favor and against Counterclaim Defendants Neelendu Bose; High Crest, LLC; Immunogen Diagnostics; Dr. Michael Segal; High Crest Functional Medicine, LLC; Stephanie Bose; High Crest Health; High Crest Medical; and High Crest Integrative Medicine, for all its damages, including costs of suit and attorneys' fees, and for treble damages under the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 et seq.

### COUNT FIVE
**Insurance Fraud, Fraud,**
**Negligent Misrepresentation and Conspiracy vs.**
**John Does 1-10 and ABC Corporations 1-10**

159.    Horizon repeats and incorporates herein by reference the allegations contained in Paragraphs 1 through 158 this Counterclaim.

160.    At all times material hereto, Defendants John Does 1-10 were individuals and practitioners who committed, participated in, solicited others to engage in, and knowingly assisted, conspired with or urged the Counterclaim Defendants named herein to commit the fraudulent act set forth in this Counterclaim.

161.    At all times material hereto, Defendants ABC Corporations 1-10 are corporations engaged in business in the State of New Jersey which committed, participated in, solicited others

to engage in, and knowingly assisted, conspired and urged the Counterclaim Defendants named herein to commit the fraudulent act set forth in this Counterclaim.

162.    As a result of the wrongful acts and fraud of John Does 1-10 and ABC Corporations 1-10, Horizon has suffered damages, including but not limited to all amounts paid for improperly and ineligible services and the costs of investigation of the losses.

163.    Pursuant to N.J.S.A. 17:33A-7, Horizon is entitled to all compensatory damages, including not limited to its costs of suit and attorneys' fees, and is entitled to recover treble damages because Counterclaim and Third Defendants engaged in a pattern of violations of the IFPA.

**WHEREFORE**, Defendant and Counterclaimant Horizon Blue Cross Blue Shield of New Jersey demands judgment in its favor and against all Counterclaim Defendants John Does 1-10 and ABC Corporations 1-10 for all its damages, including costs of suit and attorneys' fees, for punitive damages and for treble damages under the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 et seq.

**CONNELL FOLEY LLP**
Liberty View
457 Haddonfield Rd., Ste. 230
Cherry Hill, NJ 08002
(856) 317-7100

*Attorneys for Defendant/Counterclaimant*
*Horizon Blue Cross Blue Shield of New Jersey*

/s/ *Thomas Vecchio*

Date: April 18, 2016                    Thomas Vecchio, Esquire

48

3681310-1

## CERTIFICATE OF SERVICE

I, Jaime Macri, of full age, hereby certify that the Answer, Affirmative Defenses and Counterclaim has been filed with the Clerk within the time and in the manner prescribed by the Rules of Court and that a copy of the within pleading has been served this date, via ECF and first-class mail, postage prepaid, upon:

Brian Brook, Esquire
Clinton Brook & Peed
641 Lexington Avenue
13th Floor
New York, NY 10022
*Attorneys for Plaintiffs*

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Date: April 18, 2016          Jaime Macri

49

3681310-1